**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ESTATE OF JUDY MILBURN, ROSA BRANNEN, INDIVIDUAL (DAUGHTER OF DECEDENT) AND AS ADMINISTRATOR TO THE ESTATE OF JUDY DARLENE MILBURN; AND JAIME GARCIA, INDIVIDUAL (SON OF DECEDENT); | § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. 2:19-CV-00233-JRG |
| COLONIAL FREIGHT SYSTEMS INC, DOES 1 TO 5, | § § § § | |
| *Defendants.* | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Colonial Freight Systems, Inc.'s ("Colonial") Motion for Summary Judgment (Dkt. No. 55) (the "MSJ") and Colonial's Supplemental Motion for Partial Summary Judgment on Issues of (1) Gross Negligence; (2) Negligent Entrustment; (3) Negligent Hiring, Retention, Training and Supervision; and (4) Negligent Inspection, Maintenance and Repair Allegations (Dkt. No. 101) (the "Supplemental MSJ") (collectively, the "Motions for Summary Judgment"). Having considered the Motions for Summary Judgment, the subsequent briefing, the oral arguments from the parties at the Pretrial Conference held June 19, 2020, and for the reasons set forth herein, the Court is of the opinion that the Motions for Summary Judgment should be and hereby are **GRANTED**.

  **I.  BACKGROUND**

This cause of action arises out of a motor vehicle accident that occurred on January 4, 2018. At the time of the accident, Judy Milburn was asleep in the sleeping berth of a tractor trailer which

collided with other vehicles stopped on Interstate 20. (Dkt. No. 66 ¶¶ 9–20.) The truck was driven by Jimmy Crisenberry, who was a driver for Colonial. (*Id.* ¶ 10.) Ms. Milburn worked for Mr. Crisenberry as a co-driver. (Dkt. No. 72 at 9.) Plaintiffs Rosa Brannen, individually and as Administrator of the Estate of Judy Milburn, and Jaime Garcia, individually (collectively, the "Plaintiffs") assert that Colonial is liable for Ms. Milburn's injuries due to the negligence of Mr. Crisenberry and Colonial's own negligence. (Dkt. No. 66.)

Mr. Crisenberry entered into a contract (the "Lease Agreement") on November 29, 2011 with Colonial whereby he agreed to serve as an independent contractor operating under the authority of Colonial. (Dkt. No. 101, Exh. 20.) The Lease Agreement provided that if Mr. Crisenberry "determines that it is necessary to use drivers, driver helpers, laborers or others to perform the work under this agreement, they shall be employed at Contractor's [Mr. Crisenberry] expense. Such employees shall be qualified under and meet all requirements of company and company insurance policies . . ." (*Id.* at Page ID #: 1416.) The Lease Agreement further provided the following:

> 8. Contractor agrees to and shall comply with all applicable Workman's Compensation statutes concerning covering its employees and Contractor shall indemnify and hold Carrier [Colonial] harmless from all claims and demands thereof that may be made against Carrier. The laws of the state of Tennessee shall govern interpretation, enforcement and the determination of all benefits payable pursuant to workman's compensation insurance subject to the all [*sic*] contractual agreements between the parties.
>
> . . .
>
> 10. Carrier will maintain insurance coverage for the protection of the public, pursuant to all applicable federal regulations. However, Contractor shall maintain at its own expense insurance with limits and terms satisfactory to Carrier pursuant to all applicable regulations as follows:
>
> . . .

> (b) A worker's compensation insurance policy covering Contractors and their employees employed in connection with the performance of this Agreement which shall include an "All States Endorsement." The Contractor may elect to enroll in the worker's compensation program offered through Carrier for himself/herself and/or all Contractor's employees and have all costs deducted from Contractor's settlement.

(*Id.* at Page ID#: 1416–17.) Mr. Crisenberry performed under the Lease Agreement until the date of the accident on January 4, 2018. (Dkt. No. 101, Aff. of Ruby McBride, ¶ 20.)

On September 6, 2013 Ms. Milburn, Mr. Crisenberry, and Colonial executed a Workers' Compensation Contractual Agreement (the "Workers' Compensation Agreement"). (Dkt. No. 55, Exh. A-1.) The Workers' Compensation Agreement purports to provide workers' compensation coverage to both Mr. Crisenberry, as an owner/operator with Colonial, and Ms. Milburn, as a driver for Mr. Crisenberry. (*Id.*) The Workers' Compensation Agreement further provides that workers' compensation shall constitute an exclusive remedy for injuries incurred while in the execution of duties for Colonial. (*Id.*) Ms. Milburn affirmed her coverage for workers' compensation with the Tennessee Department of Labor and Workforce Development. (Dkt. No. 55, Exh. A-2.)

Following the accident, which is the subject of this action, a workers' compensation claim was opened, adjudicated, and paid to Mr. Crisenberry's estate. (Dkt. No. 75, Exh. A.) However, no such claim was processed on the behalf of Ms. Milburn's estate. Instead, this action was filed and Colonial now seeks summary judgment that the Plaintiffs' exclusive remedy is workers' compensation.

## II.  LEGAL STANDARD

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard

provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

To resolve the Motions for Summary Judgment, the Court must construe the Workers' Compensation Agreement and, by extension, the Lease Agreement, which by their terms are governed by the laws of Tennessee. Summary judgment is permissible when the language of the contractual provisions at issue is unambiguous or when the contractual language is ambiguous but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). Under Tennessee law, the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012). If the contract language at issue is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Nat'l Fitness Ctr., Inc. v. Atlanta Fitness, Inc.*, 902 F. Supp. 2d 1098, 1105 (E.D. Tenn. 2012). If a contract is ambiguous, the court applies established rules of construction to determine the parties' intent. *Id.* While a contract is ambiguous if the disputed language is susceptible to more than one reasonable interpretation, it is not ambiguous merely because the parties may differ as to interpretation of certain provisions. *Id.* Finally, the terms of an insurance contract should be construed broadly regarding terms of coverage and narrowly regarding exclusions from coverage. *Taylor v. State Farm Ins. Co.*, 775 S.W.2d 370, 372 (Tenn. Ct. App. 1989).

### III. DISCUSSION

Colonial filed the MSJ asserting that the Plaintiffs' claims are precluded by the exclusive remedy of workers' compensation. (Dkt. No. 55 at 2.) In addition, Colonial filed the Supplemental MSJ on the basis that the Plaintiffs have no evidence to support claims of direct negligence by Colonial. (Dkt. No. 101 at 2.) The Plaintiffs have responded to the Motions for Summary Judgment arguing that Ms. Milburn's injuries were not covered by workers' compensation because (1) there was no valid agreement between Ms. Milburn and Colonial; (2) there is no evidence that the workers' compensation policy premiums were paid; and (3) Ms. Milburn was not an employee injured in the course and scope of her employment, and as such, she was not covered by workers' compensation at the time of the accident. (Dkt. No. 72 at 2.)

#### A. There Was a Valid Agreement Between Ms. Milburn and Colonial.

First, the Court must determine whether there is a genuine issue of fact concerning whether or not Colonial has established that the Workers' Compensation Agreement was valid and in force at the time of the accident. To support its exclusive remedy defense, Colonial has produced both the Workers' Compensation Agreement (Dkt. No. 55, Exh. A-1) and the Lease Agreement (Dkt. No. 101, Exh. 20). Plaintiffs contend the coverage and exclusionary provisions of the Workers' Compensation Agreement create a genuine issue of material fact regarding the validity and applicability of the agreement. (Dkt. No. 72 at 15.) They contend more specifically, that the following provisions raise a genuine issue of material fact:

> WHEREAS, Operator acknowledges the Workers' Compensation insurance benefits being offered by Colonial and further by this Agreement acknowledges that the laws of the State of Tennessee shall govern application, interpretation, and enforcement of workers' compensation benefits pursuant to the terms and conditions of the Colonial Lease Agreement; and
>
> . . .

> 3. Operator understands that coverage SHALL NOT become "effective" or "in force" until premium has been paid and received by Colonial. A negative settlement shall not constitute payment.
>
> 4. Operator understands that this workers' compensation insurance shall provide coverage only while he/she is on or about the business of Colonial.
>
> 5. Operator understands that this workers' compensation insurance shall NOT provide any coverage whatsoever after the Operator/Driver has completed his/her duties under the terms of any contract with Colonial (i.e. after the load has been delivered or during any time when the Operator is at his/her home).
>
> . . .
>
> 8. It is also understood that the Workers' Compensation insurance coverage is offered by virtue of and contingent upon a valid contract between Owner/Operator Leased Operator or Driver and Colonial. Should the Contract between the parties be rendered invalid, null and void, or not in force for any reason, this Workers' Compensation agreement will also be rendered null and void and no workers' compensation coverage will be available.

(Dkt. No. 72 at 17–20 (citing Dkt. No. 55, Exh. A-1).) Plaintiffs argue that (1) the Workers' Compensation Agreement was not valid because Mr. Crisenberry rejected the Lease Agreement with Colonial during a personal bankruptcy and (2) if the Workers' Compensation Agreement was valid, one of the exclusionary provisions prevent coverage. (*Id.*; Dkt. No. 114 at 2.)

> *1. Mr. Crisenberry's Bankruptcy Discharge did not Void the Workers' Compensation Agreement.*

As to the recital and the eighth provision from the Workers' Compensation Agreement reproduced above, the Plaintiffs contend that the Lease Agreement was null and void as a result of an earlier discharge in bankruptcy regarding Mr. Crisenberry. As a result, Plaintiffs say the Workers' Compensation Agreement was not in force. (Dkt. No. 114 at 3.) In an argument raised for the first time in their sur-replies, the Plaintiffs contend that a Chapter 7 bankruptcy of Mr. Crisenberry in 2013 resulted in the Lease Agreement being terminated because it was not expressly accepted pursuant to 11 U.S.C. § 365(d). (Dkt. No. 83 at 2; Dkt. No. 114 at 3–5.) This Court notes

6

Fifth Circuit precedent that an executory contract not expressly assumed is deemed rejected in a Chapter 7 bankruptcy regardless of that contract's inclusion or exclusion on the debtor's schedules. *See In re Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018). However, the Court does not find Crisenberry's bankruptcy raises a genuine issue of material fact in this case for three reasons.

First, the Lease Agreement is not an executory contract such that it would be subject to rejection under the Bankruptcy Code. *See* 11 U.S.C. 365(d) ("In a case under chapter 7 of this title, if the trustee does not assume or reject *an executory contract* . . . then such contract or lease is deemed rejected.") (emphasis added). An executory contract is not defined by the Bankruptcy Code, but the Fifth Circuit has adopted the following definition: a contract in which the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party. *See In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62–63 (5th Cir. 1994); *see also In re Tex. Wyo. Drilling, Inc.*, 486 B.R. 746, 754 (Bankr. N.D. Tex. 2013). Courts applying this definition have concluded that contracts with no fixed length, that could be terminated at any time, and that created no obligation to act were not executory. *See In re Borgen Geng'g, Inc.*, 81 B.R. 411, 412 (E.D. La. 1988) ("The Agreement governs in the event that the parties mutually agree to and execute a task order. . . No other task orders have been executed and no obligations remain unperformed. Accordingly, the Agreement is not executory and is incapable of being assumed or rejected pursuant to Section 365."); *see also In re Monge Oil Corp.*, 83 B.R. 305, 307 (Bankr. E.D. Pa. 1988) ("[I]t is difficult to conclude that the debtor or trustee had any continuing obligation under the contract. The agreement has no fixed length, so it may be terminated at any time. . . . [T]he debtor was free to invest corporate funds with Merrill Lynch but had no obligation to do so. . . Thus, as the debtor had no obligation extant under the customer agreement, the contract not executory.").

Here, The Lease Agreement provides that it "shall remain in effect for subsequent 24 hour periods until terminated by either party as hereinafter provided. This contract may be terminated for any reason or no reason at the expiration of the initial or any renewal 24 hour period by 24 hours written notice to the other." (Dkt. No. 101, Exh. 20.) The Memorandum of Understanding attached to the Lease Agreement further states that Mr. Crisenberry had the right to select the freight and routes he drove or whether he drove any routes at all. (*Id.* at Page ID #: 1419.) The Lease Agreement is not such a contract where Mr. Crisenberry's failure to perform would constitute a material breach, as the Lease Agreement alone does not give rise to any duty or obligation to perform. Instead, it simply governs to the extent Mr. Crisenberry does accept an assignment from Colonial. Accordingly, the Lease Agreement is not an executory contract subject to rejection under the Bankruptcy Code.

Second, even if the Lease Agreement is an executory contract, its rejection does not make the Lease Agreement void, as the Plaintiffs contend. The rejection of an executory contract constitutes a breach of that contract, but a breach of contract does not make it void. *See In re Texas Sheet Metals, Inc.*, 90 B.R. 260, 273 (Bankr. S.D. Tex. 1988); *see also In re Monge Oil Corp.*, 83 B.R. at 308 ("Rejection does not make the contract null and void *ab initio*; it simply protects the estate from assuming contractual obligations on a priority, administrative basis."). Accordingly, any rejection of the Lease Agreement which may have occurred does not have the effect asserted by the Plaintiffs.

Third, to the extent the Lease Agreement became inoperable as a result of Mr. Crisenberry's bankruptcy, it was revived by Mr. Crisenberry and Colonial's post-bankruptcy conduct. Mr. Crisenberry, Colonial, and Ms. Milburn each signed the Workers' Compensation Agreement in 2013, after Mr. Crisenberry's discharge in bankruptcy, which indicates that both

Colonial and Mr. Crisenberry intended to adhere to the Lease Agreement. (*See* Dkt. No. 113-2.) Further, Mr. Crisenberry continued to drive for Colonial after the bankruptcy discharge and until the fatal accident. This was a period of approximately seven years. There is no evidence that Mr. Crisenberry was not paid pursuant to the Lease Agreement during this time, nor is there evidence that Colonial was not monitoring Mr. Crisenberry as an authorized driver pursuant to the Lease Agreement. Over this nearly seven-year period both parties to the Lease Agreement carried on under its terms and executed new documents contingent on the continued validity of said agreement.

As further evidence of Mr. Crisenberry's relationship to Colonial, Plaintiffs concede in their Second Amended Complaint that Mr. Crisenberry was an employee of Colonial and that "[a]t all relevant times, Mr. Crisenberry was Colonial's agent, employee, servant, and/or independent contractor . . .." (Dkt. No. 66 at ¶ 60.) Further, in the Joint Proposed Pretrial Order filed by the parties, the parties stipulate that "(1) Mr. Crisenberry was driving a vehicle leased to Colonial (and under the operating authority of Colonial) at the time of the accident" and "(2) Mr. Crisenberry was furthering the business of Colonial, and in the course and scope at the time of the accident." (Dkt. No. 118 at 3.) Accordingly, the Court finds that, to the extent, if any, that the Lease Agreement was rejected and became inoperable as a result of Mr. Crisenberry's bankruptcy, Mr. Crisenberry and Colonial revived and renewed the Lease Agreement by means of their post-bankruptcy conduct.

### 2. *The Exclusionary Provisions of the Workers' Compensation Agreement do not Raise a Genuine Issue of Material Fact.*

As to the remainder of the Workers' Compensation Agreement reproduced above, the Plaintiffs contend that there is a genuine issue of material fact as to whether the premiums for the workers' compensation insurance had been paid and whether Ms. Milburn was fulfilling her duties

to Colonial at the time of the accident. (Dkt. No. 72 at 17–20.) Specifically, the Plaintiffs contend that at the time of the accident, Mr. Crisenberry had a negative settlement balance with Colonial and as such, there is no evidence that the workers' compensation premiums were paid pursuant to provision three. (Dkt. No. 83 at 3.) The Plaintiffs further contend that with Ms. Milburn in the sleeping berth, she had completed her duties with Colonial at the time of the accident, and she was excluded from coverage under provisions four and five above. (Dkt. No. 72 at 12–13.)

However, as to both of these issues, Colonial has produced proper summary judgment evidence establishing that the premiums were paid and that coverage was not excluded. First, Colonial provided the affidavit testimony of Scott Simmons, the Vice President of Insurance & Safety for Colonial, who stated that at the time of Mr. Crisenberry's death, more than ample funds were present in Mr. Crisenberry's accounts with Colonial to pay the workers' compensation premiums. (Dkt. No. 75, Exh. A.) In addition, Mr. Simmons stated that Mr. Crisenberry's estate was paid under the same workers' compensation program that covered Ms. Milburn. (*Id.*) In light of the above evidence, Colonial has put forward substantial evidence that the premiums were paid. Notably, the Plaintiffs have produced no competent evidence that such premiums went unpaid.

Second, the Plaintiffs attempt to create an issue of fact concerning whether or not Ms. Milburn was carrying out the business of Colonial or had otherwise completed her duties at the time of the accident. (Dkt. No. 72 at 18–19.) In other words, the Plaintiffs contend that the Workers' Compensation Agreement is ambiguous because it is not clear whether "duty" includes "time spent in a sleeper berth." (*Id.* at 19–20.) The Plaintiffs contend this creates a genuine issue of material fact by pointing to the Federal Motor Carrier Safety Regulations Act (the "FMCSA"), which prohibits a driver from working more than a 14-hour shift. Plaintiffs say this would have

required that Ms. Milburn finish her shift before the accident, and as such, she could not have been "on duty" within the meaning of the Workers' Compensation Agreement. (Dkt. No. 72 at 11–12.)

However, considering the Workers' Compensation Agreement as a whole and the Lease Agreement it references, it is clear that the parties intended workers' compensation benefits to be provided even while a driver was in the sleeping berth, so long as the business of Colonial was still being carried out. In other words, it is clear that the parties intended for coverage to apply when the owner/operators or drivers are generating revenue. First, the Workers' Compensation Agreement provides that "workers' compensation insurance shall be assessed and paid, based upon a percentage of the line haul gross revenue, which shall be deducted and paid on a weekly basis." (Dkt. No. 55, Exh. A-1.) Second, the section of the Workers' Compensation Agreement entitled "EXCLUSIONS" provides the following:

> A. The Workers' Compensation insurance as described herein does **NOT APPLY after freight has been delivered** during any time **when no premiums are being assessed.**
>
> B. Operator/Contractor or Contractor's Driver is on or about **business NOT related to Colonial or at his/her home** (i.e. the business is NOT related to Colonial if Colonial is not collecting revenue and no premiums are being assessed or paid by Contractor/Operator.)

(*Id.*) (emphasis in original). The Court construes these exclusions to clearly tie workers' compensation coverage to the generation of revenue and the paying of premiums. Third, the Lease Agreement, on which the Workers' Compensation Agreement is contingent, ties the premiums and the benefits associated with workers' compensation to the revenue being generated by the truck. (Dkt. No. 101, Exh. 20.)

In addition, Colonial provided further evidence that supports coverage while Ms. Milburn was in the sleeper berth. First, Colonial has provided evidence that a workers' compensation claim was opened by Colonial on behalf of Ms. Milburn after they learned of her death. (Dkt. No. 55,

11

Exh. A-3.) Second, the driver logs provided and attached to the Plaintiffs' briefing show that Mr. Crisenberry was driving, and thus generating revenue for Colonial at the time of the accident. (*See* Dkt. No. 72-5.) For these reasons, the Court finds that coverage was not excluded because Ms. Milburn was in the sleeping berth when the accident occurred.

Having determined that the Lease Agreement was operable and in force, and that the Workers' Compensation Agreement provided coverage, there is no remaining genuine issue of material fact concerning the applicability of the Workers' Compensation Agreement. Accordingly, if there is no genuine issue of material of fact regarding whether Ms. Milburn was in the course and scope of her employment at the time of the accident,[1] then the Plaintiffs' claims against Colonial are barred as a matter of law.[2]

### B. Ms. Milburn Was Injured in the Course and Scope of her Employment.

The Plaintiffs argue that Ms. Milburn was not in the course and scope of her employment at the time of the accident because she had completed her driving duties on that particular trip and was asleep in the sleeping berth of Crisenberry's tractor-trailer at the time of the accident. (Dkt. No. 72 at 9.) Plaintiffs contend workers' compensation is not applicable under these facts. (*Id.*) However, caselaw makes clear that these factual distinctions do not create an issue of material fact regarding whether Ms. Milburn was in the course and scope of her employment.

---

[1] There is substantial overlap between this issue and the issue concerning the meaning of "duty" in the Workers' Compensation Agreement, but the Plaintiffs make distinct arguments as to each issue. Thus, the Court addresses each in turn.

[2] The Workers' Compensation Agreement is governed by Tennessee law and provides that workers' compensation is an exclusive remedy. Furthermore, Tennessee law provides that workers' compensation is the exclusive remedy for a common-law tort action against an employer who has exclusivity provisions. *Malkiewicz v. R.R. Donnelley & Sons Co.*, 794 S.W.2d 728, 728 (Tenn. 1990); Tenn. Code Ann. § 50-6-108 ("The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.").

Under Tennessee law[3], an injury must arise out of and be incurred in the course of employment to be covered under workers' compensation law. *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 533 (Tenn. 2006). An injury arises within one's employment when there is a causal connection between the conditions under which the work is required to be performed and the injury. *Id.* at 534. Furthermore, an injury occurs in the course of employment if it takes place within the period of employment, at a place where the employee reasonably may be, and is incurred while the employee is fulfilling work duties or engaged in doing something incidental to those duties. *Id.*

The Court finds that Ms. Milburn's injuries arose out of and within the course and scope of her employment with Colonial. There is a rational, causal connection between her presence in the sleeping berth and her role as a co-driver with Colonial. The entire purpose of drivers working in tandem is that one driver may sleep while the other driver continues to drive. Thus, a necessary part of Ms. Milburn's job was to rest in the sleeping berth while her co-driver operated the truck. Her presence in the truck furthered the business of Colonial by allowing for continuous operation of the truck. Furthermore, caselaw supports this conclusion. *See Sepulveda v. Western Exp., Inc.*, No. M200700121WCR3WC, 2008 WL 887241, at *4 (Tenn. Workers Comp. Panel Mar. 31, 2008) (finding that sleeping in the cab of a truck is in the nature of the job of a driver); *see also Consumers Cty. Mut. Ins. Co v. PW & Sons Trucking, Inc.*, 307 F.3d 362, 367 n.8 (5th Cir. 2002) (finding that a driver injured during his designated resting time was still in the course and scope of his employment). Accordingly, Ms. Milburn was in the course and scope of her employment despite being in the cab's sleeping berth at the time of the accident.

---

[3] Having determined that the Workers' Compensation Agreement is applicable to this dispute, the Court must give effect to the choice of law provision contained in the agreement and apply Tennessee law as it has not been shown that Tennessee does not have a substantial relationship to this dispute. Nor has it been shown that application of Tennessee law in this instance would be contrary to a fundamental policy of Texas. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015).

Having determined that there is no genuine issue of material fact regarding whether the Workers' Compensation Agreement was valid and in force at the time of the accident and that Ms. Milburn was injured in the course and scope of her employment, the Court need not address the other arguments raised by the parties in the Motions for Summary Judgment because Plaintiffs' claims are barred as a matter of law and workers' compensation is the Plaintiffs' exclusive remedy.

### IV. CONCLUSION

Based on the foregoing, the Court is of the opinion that the Motions for Summary Judgment should be and hereby are **GRANTED**. All other pending motions in this case are **DENIED AS MOOT**.

So ORDERED and SIGNED this 30th day of June, 2020.

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE